On April 7, 1999, appellee, the Stark County Department of Job and Family Services, filed a complaint alleging Jenna Meadows born April 1, 1999 to be neglected and or abused as Jenna tested positive for cocaine at the time of her birth. Mother of the child is appellant, Jennifer Meadows; father is Paul Madison, Sr. By judgment entry filed June 7, 1999, the trial court found the child to be neglected. A case plan was filed on May 4, 1999 and amended on September 9, 1999. On January 25, 2000, appellee filed a motion for permanent custody. A hearing was held on May 2, 2000. By judgment entry filed May 16, 2000, the trial court awarded permanent custody of the child to appellee. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED THE STARK COUNTY DEPARTMENT OF HUMAN SERVICE'S MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES MADE REASONABLE EFFORTS AS REQUIRED BY O.R.C. SECTION 2151.419 TO RETURN THE CHILD TO THE CHILD'S HOME.
 III. THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND THAT JENNA MEADOWS CANNOT AND/OR SHOULD NOT BE PLACED WITH EITHER PARENT AT THIS TIME OR IN THE FORESEEABLE FUTURE.
I, II, III
Appellant's three assignments of error challenge the trial court's awarding of permanent custody of the child to appellee. Appellant claims the decision was against the manifest weight of the evidence, it was error in finding reasonable efforts by appellee and it was error in finding the child could not be placed with either parent in the foreseeable future. We disagree. As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758, unreported. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279. R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows: (E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
of the Revised Code;
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 (11) The parent has had parental rights involuntarily terminated pursuant to section 2151.353, 2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child; (16) Any other factor the court considers relevant.
R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following: (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
The child sub judice tested positive for cocaine at birth as appellant was cocaine dependent at the time. T. at 95. Appellant has previously had three other children taken from her as she was unable to complete the objectives of the respective case plans. See, In Re: Madison/Meadows Children, Minor Children (February 28, 2000), Stark App. No. 1999CA000156, unreported. The case plan in this case called for essentially the same objectives, the parents were to attend Quest Recovery Services, have employment and maintain stable housing. T. at 40-41. Appellant was also required to attend Goodwill Parenting classes. T. at 40. Appellant signed up for parenting classes in September of 1999 but failed to show up. T. at 18-19. At the time of the hearing, appellant was not signed up for parenting classes. T. at 18, 47. Instead of entering Quest, appellant was permitted to enter the Chances program, a drug court program. Admission to this program was the result of a receiving stolen property and possession of illegal substance felony indictment. T. at 11-12. While in Chances, appellant had a positive drug screen and as a result was sent to jail for the weekend. T. at 12, 77. This in turn caused her to miss a scheduled home visitation. T. at 77. For a time (nine months), the caseworker, Cynthia Moore, did not have any contact with appellant. T. at 43. During this time, appellant served three jail sentences (thirty days, two months and three months) for driving without a license, possession of drug paraphernalia and loitering to engage in solicitation. T. at 8-10, 84. Appellant finally contacted Ms. Moore two weeks prior to the final hearing. T. at 43. Although appellant now claims to have stable housing and a part-time job, Ms. Moore was not able to verify this. T. at 6-7, 20-21, 40, 61. During the twelve months the child was in foster placement, appellant only saw the child five times. T. at 43, 48. From October 1999 until the last week in April of 2000, appellant saw the child one time and had not made any other attempts to see her. T. at 43, 82. At the time of the permanent custody hearing, the father, Mr. Madison, was incarcerated but claimed to have a home and job upon release. T. at 87-88. This claim was not verified. T. at 41. Mr. Madison attended the Chances program but was terminated for testing positive for cocaine and asking a staff member to falsify his drug screen. T. at 23. Also, Mr. Madison associated with other felons in the program in violation of his probation. Id. During the best interests phase, it was established that the child, thirteen months old, was on target developmentally, had no medical problems, had no bond with appellant and was adoptable. T. at 95-98. It is obvious that neither parent made any effort to fulfill the case plan or establish any bonds with the child until after the permanent custody hearing was set. This "too little, too late" effort was not an indication of any commitment to the child or parenting but was the last failure in an attempt to fulfill the objectives of the case plan. Appellant was very familiar with the need to fulfill the objectives of the case plan from her prior case involving her other children, but chose not to commit herself to parenting. Based upon the parents' failure to meet the objectives set forth in the case plan, we find there was clear and convincing evidence to support the trial court's decision to grant permanent custody of the child to appellee. Assignments of Error I, II and III are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Family Court Division is hereby affirmed.
Farmer, J. Gwin, P.J. and Wise, J. concur.